## LOCKWOOD v. HOOPER and others.[1]

*(Circuit Court, D. Massachusetts. November 24, 1885.)*

**1. PATENTS FOR INVENTIONS.**
The patent to Rhodes Lockwood, No. 167,445, of September 7, 1875, construed and sustained; following *Lockwood* v. *Cutter Tower Co.*, 11 Fed. Rep. 724, and 18 Fed. Rep. 653; and *Lockwood* v. *Cleveland*, 18 Fed. Rep. 37.

**2. SAME—DISCLAIMER.**
A disclaimer limiting the claim of this patent to "a rubber eraser having the soft finished erasive surface produced by tumbling the eraser, substantially as hereinbefore described," does not make this patent a different one from that which was sustained in the cases cited.

**3. SAME—PRIOR USE—EVIDENCE.**
Affidavits as to a prior use disproved by the fact that the parties making them had accepted and operated under a license from the patentee.

In Equity.

*Browne & Browne*, for complainant.

*Francis Forbes*, for defendants.

NELSON, J. This case was heard upon the plaintiff's motion for an interlocutory injunction to restrain the defendants from selling velvet erasive rubber, in violation of the plaintiff's patent, granted September 7, 1875. This patent has been sustained by this court in *Lockwood* v. *Cutter Tower Co.*, 11 Fed. Rep. 724, and 18 Fed. Rep. 653. After the last decision, that case was reopened upon the defendant's motion, upon the ground of newly-discovered evidence. The original decree has been recently confirmed upon an *ex parte* hearing, the defendant having abandoned the defense of the suit. The patent was also sustained by Judge NIXON in *Lockwood* v. *Cleveland*, 18 Fed. Rep. 37. The defendants in this case are stationers in Boston, and procure their velvet rubber of one Faber, a large dealer in erasive rubber in New York, and have Faber's guaranty to protect them against the plaintiff's patent. That the rubber which they are sell-

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

ing is an infringement of the plaintiff's patent, if valid, is not disputed.

The patented invention consists in blocks of erasive rubber, from which the glaze or crust, formed on the surface in vulcanization, has been removed by the operation of tumbling described in the patent. Tumbling blocks of erasive rubber, as well as other small articles, sufficiently to clean them, but without removing the crust, is old. But it is alleged by the patentee that tumbling was never so practiced before his invention as to remove the crust and produce such an article, as to the condition of the surface, as he produces. Since the decisions cited from the Federal Reporter, the plaintiff has filed a disclaimer limiting his claim to "a rubber eraser having the soft, finished, erasive surface produced by tumbling the eraser, substantially as hereinbefore described." The defendants contend that this disclaimer makes the patent a different one from that which was sustained in the cases cited, and that, therefore, the plaintiff should have no benefit from them in support of his motion. But the disclaimer has only explicitly limited the patent to that which this court held to be the patented invention before the disclaimer was filed. It is shown, on the part of the plaintiff, that the rubber block produced by the tumbling process is distinguishable in appearance from one from which the crust might be removed in any other way; and also that it is the only known way in which it can be produced without such expense as to make it commercially impracticable. Considering, then, the invention in the light of the disclaimer, it appears to be, as this court has already held it to be, patentable.

The defendants read affidavits to prove that one Christopher Roberts made and sold, at his factory, in Newark, New Jersey, erasive rubber, like the patented article, long before the plaintiff's invention, and has done so continuously ever since. It appeared that all the erasive rubber made by Roberts was manufactured for Faber and his predecessors in business; and that Faber has sold only what was manufactured by Roberts. If, therefore, Roberts had made rubber like the plaintiff's, the fact must have been known to Faber. But the letters of Faber to the plaintiff, which were read in evidence, are wholly inconsistent with the claim now made, that this invention was well-known and practiced in Roberts' factory.

The affidavits are also disproved by the fact that in 1884 Faber accepted a license from the plaintiff to make and sell erasive rubber under the patent. Under this license, the plaintiff's rubber was manufactured by Roberts, and sold by Faber, and the latter accounted for and paid the stipulated license fees until the license was revoked by Lockwood, in pursuance of a power reserved to him in the written instrument. As it very plainly appears that this suit is being defended by Faber under his guaranty given to the defendants, his admissions and conduct become important and convincing evidence. This defense was also set up and abandoned in the rehear-

ing of *Lockwood* v. *Cutter Tower Co.* The plaintiff will derive but little benefit from the former decrees in his favor, if they cannot be used in support of injunctions, *pendente lite*, against palpable infringements, such as Faber's are shown to be. Injunction to issue.